UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENETRA T. BRISBON, ) <br> ) <br>          Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> RICHARD S. TISCHNER, in his official ) <br> capacity as Director of the Court Services ) <br> and Offender Supervision Agency, ) <br> ) <br> ) <br>          Defendants. ) <br> ) | Civil Action No. 20-3183 (RBW) |

### MEMORANDUM OPINION

The plaintiff, Denetra T. Brisbon, brings this civil action against the defendant, Richard S. Tischner, in his official capacity as Director of the Court Services and Offender Supervision Agency ("Agency"), asserting a claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a) ("Title VII"). See Complaint ("Compl.") at 1. Currently pending before the Court is the defendant's Motion to Dismiss Plaintiff's Complaint ("Def.'s Mot." or the "defendant's motion"), ECF No. 10. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendant's motion.

### I.     BACKGROUND

The following allegations are taken from the Complaint, unless otherwise specified. The plaintiff is an African American female employed as a GS-13 Supervisory

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Memor[]an[d]um of Points and Authorities in Opposition[ ]to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 13; and (2) the defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 15.

Community Supervision Officer ("CSO") at the Agency in Washington, D.C.  See Compl. ¶ 6.  The Agency is an administrative agency of the United States government.  Id. ¶ 5.  The plaintiff has served in her current position at the Agency since March 2008.  Id. ¶ 6.  She reports to Elizabeth Powell, the Branch Chief/Compact Administrator, and her second-level supervisor, Yolanda Bethea, the Deputy Associate Director/Acting Associate Director.  Id.  The defendant, Richard S. Tischner, is being sued in his official capacity as Director of the Agency.  Id. ¶ 5.

**A.  Factual Background**

Between 2008 and 2021, the plaintiff engaged in several disputes with her employer, including challenging certain hiring decisions.  The plaintiff has also filed several Equal Employment Opportunity ("EEO") complaints against the Agency.  See id. ¶¶ 6–21.  First, in 2008,[2] the plaintiff "filed an EEO complaint against the Agency after her former supervisor made a racist comment" (the "2008 EEO Complaint").  Id. ¶ 7.  The Equal Employment Opportunity Commission (the "Commission") found the Agency in default and "awarded significant damages and attorneys' fees to [the plaintiff]."  Id.  Thereafter, in 2014, the plaintiff filed a second EEO complaint (the "2014 EEO Complaint") alleging "reprisal for a lowered performance evaluation[.]"  Id.  This complaint was withdrawn in 2016.  Id.

The plaintiff also has another case pending before this Court alleging "discrimination and harassment based on race, age, and reprisal," id., which was filed on October 10, 2017 ("Brisbon I").  Compl. at 1, Brisbon v. Tischner, Civil Action No. 17-2099 (D.D.C. Oct. 10, 2017), ECF

---

[2] There are inconsistencies between the text of the Complaint and the plaintiff's opposition regarding the year that her first EEO complaint was filed.  The plaintiff's opposition alleges that she filed her first complaint in 2007, see Pl.'s Opp'n at 2, while in her Complaint, she alleges that it was filed in 2008, see Compl. ¶ 26 (referring to "litigation arising from her February 2008 complaint of discrimination and subsequent EEO complaint").  The defendant identifies the plaintiff's first EEO complaint as having been filed in 2008.  Def.'s Mot. at 2.  Since there is consistency by the parties as to the year 2008, the Court assumes that the first EEO complaint was filed in 2008 and will therefore refer to it as the "2008 EEO Complaint."

No. 1.  The Brisbon I complaint alleged that the plaintiff was discriminated against based on race and age when her supervisor, Yolanda Bethea, selected Kaitlin Forsha, a thirty-two year-old white woman, for a Branch Chief position despite the plaintiff being "substantially better qualified than [ ] Forsha . . . based on experience, training, certifications[,] and performance." Compl. ¶ 14.

The allegations that led to the filing of this case stem from the plaintiff's performance rating for the period of July 1, 2016, through June 30, 2017, which she received on August 10, 2017.  See id. ¶ 15; Def.'s Mot. at 4.  The plaintiff alleges that she "was highly rated as an employee and normally received a level 4 rating" in her performance reviews.  Compl. ¶ 15.  However, the plaintiff received a "substantially lower performance appraisal rating score of 370 (Level 3) covering the period of July 1, 2016[,] through June 30, 2017[,]" id., as compared to the "performance appraisal rating score of 433 (Level 4)[,]" id., that she had received the prior year, id.  Powell and Bethea were the Responsible Management Officials ("RMOs") who issued both appraisal ratings for 2016 and 2017.  Id.  The plaintiff alleges that her professional performance "warranted a performance appraisal rating of a high Level 4 or a low Level 5, not a Level 3."  Id. ¶ 16.  The plaintiff claims that the performance of her team also improved over the course of the previous year according to the Agency Performance Management Dashboard and that, in addition to her regular duties, she was also tasked with "assignments commensurate with the position of Branch Chief, such as Probable Cause Meetings and attending Metropolitan Police Department Commanders Meetings," which she completed successfully.  Id.

On September 18, 2017, the plaintiff first contacted the Agency's Office of Equal Employment Opportunity to file a complaint against Powell and Bethea regarding her lowered performance rating.  See Def.'s Mot., Exhibit ("Ex.") A (EEO Counselor's Report).  "Following

3

an investigation, the Agency issued a final decision finding no discrimination[,]" Def.'s Mot., Ex. B (Decision on Request for Reconsideration ("OFO Decision")) at 1, after which the Commission "affirmed the Agency's final decision[,]" id., Ex. B (OFO Decision) at 1. The plaintiff requested reconsideration by the Commission. See id., Ex. B (OFO Decision) at 1. On July 31, 2020, the plaintiff emailed a waiver of receipt of the administrative decision, thus waiving her right to receive the administrative decision by First Class mail and instead opting for service by email. Def.'s Mot. at 2; id., Ex. C (Email from Denetra T. Brisbon to OFO Decisions (July 31, 2020 3:36 p.m.) ("Pl.'s Waiver")). On August 4, 2020, the Commission issued its decision denying the plaintiff's request for reconsideration. See id., Ex. B (OFO Decision) at 2–3. This text of the decision represents that the "decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision." Id., Ex. B (OFO Decision) at 2. It further states that the complainant "ha[s] the right to file a civil action . . . within ninety (90) calendar days from the date that [she] receive[s] th[e] decision." Id., Ex. B (OFO Decision) at 2. The defendant represents that the plaintiff "was notified [of the decision] on August 4, 2020, via email[.]" Def.'s Mot. at 8. The plaintiff "believes the [administrative] decision was received and viewed [by her counsel] on August 6, 2020." Pl.'s Opp'n. at 8.

**B.      Procedural History**

On November 3, 2020, the plaintiff initiated this civil action, alleging that the defendant "knowingly [ ] retaliated against [her] for participating in litigation arising from her February 2008 complaint of discrimination and subsequent EEO complaint which was resolve[d] in 2016, and filing an EEO complaint as a result of the denial of a Branch Chief Position in 2016." Compl. ¶ 26. On May 14, 2021, the defendant filed his motion to dismiss. See Def.'s Mot. at 1.

4

The plaintiff then filed her opposition on June 14, 2021, see Pl.'s Opp'n at 1, and the defendant filed his reply on September 30, 2021, see Def.'s Reply at 1.

## II.  STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . .

5

will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).

### III. ANALYSIS

The defendant argues that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because "[the p]laintiff did not commence this action within the time provided by statute[,]" Def.'s Mot. at 2, which, the defendant argues, began to run when the plaintiff, having previously "waived service by First Class mail[,]" "was notified [of the administrative decision] on August 4, 2020, via email[,]" id. at 8.[3]  In response, the plaintiff argues that (1) she timely filed her complaint within ninety days of her counsel's receipt of the OFO decision, which the plaintiff argues is the relevant date of receipt that triggers the running of the statute of limitations under 29 C.F.R. § 1614.605(d), and (2) her waiver of service by mail was invalid because her "counsel is not copied on the waiver" and it is therefore "not effective as a waiver for [the plaintiff's] counsel." Pl.'s Opp'n at 8.  In reply, the defendant argues that (1) "[the p]laintiff's invocation of 29 C.F.R. § 1614.605(d) for calculation of timing for filing suits is misplaced[,]" Def.'s Reply at 2, and "[the p]laintiff filed her Complaint after the close of the [ninety]-day window[,]" id. at 4–5, which "began on August 4, 2020[,]" id. at 4, when the plaintiff herself received notice of the OFO decision, and (2) her waiver of service by mail was

---

[3] The defendant also argues that this case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because "[the p]laintiff [f]ails to [s]tate a [c]laim of [r]etaliation[.]" Def.'s Mot. at 8. However, because the Court's ruling on dismissal pursuant to Rule 12(b)(1) is ultimately dispositive, see infra Section III.B, the Court need not conduct a Rule 12(b)(6) analysis. See Sledge v. United States, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) ("Once a court 'determines that it lacks subject matter jurisdiction, it can proceed no further.'" (quoting Simpkins v. District of Columbia Gov't, 108 F.3d 366, 371 (D.C. Cir. 1997)); see also Green v. Stuyvesant, 505 F. Supp. 2d 176, 177 n.2 (D.D.C. 2007) (Walton, J.) ("[D]ue to the resolution of the defendants' Rule 12(b)(1) request, the Court does not need to address [ ] alternative grounds for dismissal at this time."); Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 20 (D.D.C. 2003) (Walton, J.) ("Although [the d]efendant states in his motion that he is seeking dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismissal, if warranted, could be entered solely on Rule 12(b)(1) grounds.").

effective because the relevant regulatory provision "does not provide instruction on the validity of waivers and does not impose requirements that the [plaintiff's] counsel be properly notified when the [plaintiff] submits a waiver[,]" id.  To determine whether the plaintiff properly filed within the ninety-day limitations period, the Court must first identify which date of receipt triggers the beginning of the limitations period—receipt by the plaintiff herself or receipt by the plaintiff's counsel.  Second, the Court must evaluate the validity of the plaintiff's waiver of service by mail in order to identify the actual date of receipt in this case.  Accordingly, the Court will proceed with its analysis by determining: (1) the relevant date of receipt for purposes of triggering the start of the limitations period, and (2) the validity and effect of the plaintiff's waiver of service by mail on the date of actual receipt of the administrative decision.

**A.      The Relevant Date for Purposes of Triggering the Limitations Period**

First, the Court will determine the relevant date for purposes of triggering the start of the statute of limitations period.  The defendant argues that the plaintiff has failed to comply with the statute of limitations requirement of Title VII because "under 42 U.S.C. § 2000e-16(c), [the p]laintiff is required to commence an action in [f]ederal [c]ourt no later than ninety days after an agency's decision" and   "[h]ere, although she was represented by [c]ounsel, [the p]laintiff did not commence this action within the time provided by statute." Def.'s Mot. at 2.  In response, the plaintiff contends that "29 C.F.R. § 1614.605(d) provides that when a complainant has designated an attorney as representative, all timeframes are computed from receipt of materials by that attorney rather than the complainant." Pl.'s Opp'n. at 8.  Regarding notice of agency decisions, 29 C.F.R. § 1614.605(d) states:

> Unless the complainant states otherwise in writing, after the agency has received written notice of the name, address[,] and telephone number of a representative for the complainant, all official correspondence shall be with the representative with copies to the complainant. When the complainant designates an attorney as

> representative, <u>service of all official correspondence shall be made on the attorney and the complainant</u>, but time frames for <u>receipt of materials shall be computed from the time of receipt by the attorney</u>. The complainant must serve all official correspondence on the designated representative of the agency.

<u>Id.</u> (emphasis added). In contrast, 42 U.S.C. § 2000e-16(c) does not specify whether notice of a final agency decision must be received by the plaintiff herself or the plaintiff's counsel, only that "[w]ithin [ninety] days of receipt of notice of final action taken by a department, agency, or unit . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, . . . may file a civil action[.]" 42 U.S.C. § 2000e-16(c).

The defendant represents that the plaintiff received notice of the final OFO decision via email on August 4, 2020, <u>see</u> Def.'s Mot. at 8,[4] and the parties agree that the plaintiff's counsel received notice of the OFO decision on August 6, 2020, <u>see</u> Pl.'s Opp'n at 8; Def.'s Reply at 4. The plaintiff filed her Complaint on November 3, 2020, <u>see</u> Compl. at 1, which falls within the limitations period if the period was triggered on August 6, 2020, but one day outside of the limitations period if the period was triggered on August 4, 2020. Thus, the key question to be determined is which date—the date the plaintiff received notice or the date the plaintiff's counsel received notice—begins the ninety-day limitations period. The notice explanation of 29 C.F.R. § 1614.605(d) clearly states that "timeframes for receipt of materials shall be computed from the time of receipt by the attorney[,]" 29 C.F.R. § 1614.605(d), while the statute of limitations requirement of Title VII is silent as to who is the required recipient, <u>see</u> 42 U.S.C. § 2000e-16(c).

---

[4] The plaintiff does not explicitly agree or contest that she was notified via email of the OFO decision on August 4, 2020. <u>See generally</u> Pl.'s Opp'n. Instead, her argument regarding this alleged email notification is limited to her challenge of the validity of the waiver of service by mail, not a challenge to the allegation that she received actual notification of the decision via email on August 4, 2020. <u>See id.</u> at 7–8. The plaintiff also implies that this email notification occurred when she states in her opposition that "[the d]efendant claims that [the plaintiff's] ninety (90) day limit began on August 4, 2020[,] when she was notified via email[.]" <u>Id.</u> at 7. The Court will discuss the date of actual notice as part of its discussion regarding the plaintiff's waiver of service by mail. <u>See infra</u> Section III.B.

Thus, to determine which is the applicable date in this case, the Court must determine whether 29 C.F.R. § 1614.605(d) applies here.

The Supreme Court has stated that, for purposes of actions brought under Title VII, "notice of final action is 'received' when the [Commission] delivers its notice to a claimant or the claimant's attorney, whichever comes first." Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 92 (1990). Furthermore, in a case in which a plaintiff asserted the applicability of the attorney receipt requirement of 29 C.F.R. § 1614.605(d), another member of this Court stated that "[w]hat the plaintiff has failed to recognize is that '[29 C.F.R. § 1614.605(d)] applies to administrative proceedings before the [Commission]; it does not purport to apply to the limitations period for filing suit in federal court.'" Harris v. Bodman, 538 F. Supp. 2d 78, 81 (D.D.C. 2008) (quoting McKay v. England, No. 01-2535, 2003 WL 1799247, at *6 (D.D.C. Mar. 27, 2003)). The language of the regulation is trained exclusively on the procedures within the administrative adjudication process, see id. (citing language from subsections in 29 C.F.R. § 1614.605, which consistently reference administrative procedures only), and "is inconsistent with the plaintiff's theory that § 1614.605(d) applies to relieve a complainant represented by counsel of all responsibility for timely filing a civil action[,]" id. Therefore, the Court concludes that 29 C.F.R. § 1614.605(d) does not apply here.

Accordingly, the Court concludes that notice in this case was effective when either the plaintiff or her counsel, "whichever [came] first," Irwin, 498 U.S. at 92, received the OFO decision. See McKay, 2003 WL 1799247, at *2 (rejecting the applicability of 29 C.F.R. § 1614.605(d) where the plaintiff "had actual notice of the final order, containing an explicit warning that he must file suit in federal court within ninety days of his receipt of that notice, and he failed to act in a timely fashion"). Therefore, to

determine the earliest date of receipt of notice, the Court will address the validity of the plaintiff's waiver of service by mail and its effect on the date of actual receipt of the Commission's final decision.

**B.     The Validity and Effect of the Plaintiff's Waiver of Service by Mail**

Having established that the applicable date for purposes of triggering the limitations period is either the date when the plaintiff herself or the date when the plaintiff's counsel received notice of the OFO decision—whichever occurred first—the Court now turns to the question of the plaintiff's waiver of service by mail and its effect on the date of the plaintiff's actual receipt of notice.  The plaintiff argues in her opposition that "[the d]efendant has presented a waiver sent to the [Commission] by [the plaintiff], but [the plaintiff's] counsel is not copied on the waiver, and it is not effective as a waiver for [the plaintiff's] counsel." Pl.'s Opp'n at 8 (internal citation omitted).  The plaintiff states that, because of the invalidity of the plaintiff's waiver, the applicable date of receipt is the date that her counsel "received and viewed [the OFO decision] on August 6, 2020[,]" and that the Complaint "is therefore timely." Id.  Furthermore, the plaintiff states that "[t]he fact that [the plaintiff] signed a waiver does not establish that the decision was received on August 4, 202[0]." Id.

The plaintiff does not provide, and the Court has not identified, any authority to support the contention that a complainant's counsel must be copied on a waiver of service for the receipt of an OFO decision. See 29 C.F.R. § 1614.604(c) (stating only that "[t]he time limits in this part are subject to waiver," without identifying specifics related to the validity of a waiver); see generally Pl.'s Opp'n.  Additionally, the portions of 29 C.F.R. § 1614.605(d) that refer to involvement of the complainant's attorney reference only service of official correspondence, and not the complainant's ability to unilaterally submit a waiver of service. See 29 C.F.R.

10

§ 1614.605(d) ("When the complainant designates an attorney as representative, service of all official correspondence shall be made on the attorney and the complainant[.]").  More importantly, the provision that specifically governs waiver of service by mail makes no mention of required attorney involvement in the waiver process at all, instead stating only that "[t]he time limits in this part are subject to waiver, estoppel[,] and equitable tolling."  29 C.F.R. § 1614.604(c).  Therefore, the Court finds the plaintiff's waiver of service by mail in favor of email notification valid.

Having determined the validity of the plaintiff's waiver of service by mail, and thus that notification of the OFO decision by email was proper in this case, the Court must determine the actual date that the plaintiff received notice.  The defendant states that the plaintiff "was notified on August 4, 2020, via email because she ha[d] waived service by First Class mail."  Def.'s Mot. at 8.  The plaintiff does not explicitly contest that she received an email notification of the OFO decision on the date of issuance, August 4, 2020, see generally Pl.'s Opp'n, although she does state that "[t]he fact that [the p]laintiff signed a waiver does not establish that the decision was received on August 4, 202[0]" and that "[t]he [Commission] presumes that the decision is received within five days of the issuance of the [d]ecision," id. at 8 (citing Pl.'s Opp'n, Ex. A (Certificate of Service of OFO Decision ("Certificate of Service"))).  Nonetheless, the plaintiff does in fact imply in her opposition that she did receive an email notification of the OFO decision on August 4, 2020.  See id. at 7 ("[The d]efendant claims that [the plaintiff's] ninety (90) day limit began on August 4, 2020[,] when she was notified via email[.]").

The plaintiff is correct in stating that the Commission employs a presumption of service within five days after the decision is sent.  See id., Ex. A (Certificate of Service) at 1 ("For timeliness purposes, the Commission will presume that the decision was received within five [ ]

11

calendar days after it was sent."). However, a presumption of service is only applied where the actual date of service is unknown. See Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 n.3 (D.C. Cir. 1998) ("In the event that a date [of receipt] is not pleaded, the Supreme Court has applied [the presumptive date of receipt.]"); Ruiz v. Vilsack, 763 F. Supp. 2d 168, 171 (D.D.C. 2011) ("Where a plaintiff fails to plead the date that he received the right-to-sue letter, the court must fix a presumptive date of receipt for purposes of determining whether [the p]laintiff complied with the ninety day filing requirement." (internal quotations omitted)); see also McGary v. Crowley, 266 F. Supp. 3d 254, 261 (D.D.C. 2017) ("By default, the [ninety]-day window to sue runs from the employee's 'actual notice' of the final administrative decision[.]"). Here, the plaintiff effectively waived service by First Class mail and opted for service by email, see Def.'s Mot., Ex. C (Pl.'s Waiver), and the OFO decision was emailed to the plaintiff on August 4, 2020, see Pl.'s Opp'n, Ex. A (Certificate of Service). Therefore, given the immediate transmission of the OFO decision via email, the Court concludes that the date of transmission constitutes the date of actual receipt. Moreover, the plaintiff does not explicitly contest that she received the OFO decision via email on August 4, 2020. See generally Pl.'s Opp'n. Accordingly, the Court is compelled to find that the plaintiff received actual notice of the OFO decision—and thus, the ninety-day limitations period began to run, on August 4, 2020. While unfortunate, because the plaintiff filed her Complaint ninety-one days later—on November 3, 2020—the Court must grant the defendant's motion and dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1).[5]

---

[5] Although not raised by the plaintiff, see generally Pl.'s Opp'n, the Court has also considered whether it is appropriate to equitably toll the statute of limitations, given that the plaintiff filed her Complaint one day after the conclusion of the ninety-day limitations period. Although the ninety-day statute of limitations under Title VII is "subject to waiver, estoppel, and equitable tolling[,]" Mondy v. Sec'y of the Army, 845 F.2d 1051, 1054 (D.C. Cir. 1988) (internal citation omitted), "[t]olling applies only in 'extraordinary and carefully circumscribed instances[,]'" Wiley v. Johnson, 436 F. Supp. 2d 91, 96 (D.D.C. 2006) (quoting Mondy, 845 F.2d at 1057), such as where
(continued . . .)

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendant's motion to dismiss.

**SO ORDERED** this __ day of ____, 2022.[6]

REGGIE B. WALTON  
United States District Judge

---

(. . . continued)

> a claimant has received inadequate notice, . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction[,]

Mondy, 845 F.2d at 1057 (internal quotations omitted). Courts are generally "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his [or her] legal rights[,]" Irwin, 498 U.S. at 96, and require "more than a garden[-]variety claim of excusable neglect[,]" Battle v. Rubin, 121 F. Supp. 2d 4, 8 (D.D.C. 2000) (citation and internal quotation marks omitted), as a basis for applying equitable tolling. This is true where a plaintiff "miss[es] the deadline by even one day." Wiley, 436 F. Supp. 2d at 96; see, e.g., Smith v. Dalton, 971 F. Supp. 1, 2–3 (D.D.C. 1997) (dismissing a Title VII suit where the plaintiff filed ninety-one days after final agency action). Thus, having identified no extraordinary circumstances in this case, the Court concludes that it would not be appropriate to apply equitable tolling in this case.

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.